UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| GENE DRISKILL,<br>THOMAS DRISKILL, JR., and<br>THOMAS DRISKILL, SR.,<br><br>      Plaintiffs,<br><br>v.<br><br>GRANT ROSENBERG, Director,<br>Knox County Office of Neighborhoods, and<br>MICHAEL R. RAGSDALE, Knox County Mayor,<br><br>      Defendants. | NO.: 3:10-CV-65<br>     (VARLAN/SHIRLEY) |

## **MEMORANDUM OPINION**

This civil action is before the Court on Defendants' Motion for Summary Judgment [Doc. 22]. Plaintiffs have not filed a response, and the time for doing so has passed. *See* E.D.TN. LR 7.1(a), 7.2. For the reasons explained herein, the Court will grant defendants' motion.

**I.    BACKGROUND**

This action arises out of the towing of several vehicles from property owned by Barbara and Gordon Kinter, husband and wife, located at 609 Corum Road, Knox County, Tennessee on February 25, 2009 (the "subject property") [Doc. 2]. The property is zoned as agricultural under the Knox County Zoning Ordinance and consists of approximately four acres [Doc. 23]. Plaintiffs' complaint asserts claims for violation of civil rights and various state tort claims [Doc. 2]. It names Grant Rosenberg ("Rosenberg"), Director of the Knox

County Office of Neighborhoods (the "Office of Neighborhoods"), and Michael R. Ragsdale ("Ragsdale"), Knox County Mayor, as defendants [*Id.*].

On or before March 4, 2008, the Office of Neighborhoods received a complaint that the subject property contained several inoperable vehicles [Doc. 23]. On or before March 18, 2008, employees of the Office of Neighborhoods investigated the complaint and observed abandoned and inoperable vehicles on the subject property in an open field, which were clearly visible from the public right of way and from the property adjacent to the subject property [*Id.*]. Upon investigation, the Office of Neighborhoods determined that Gordon and Barbara Kinter (the "Kinters") owned the subject property [*Id.*]. On March 18, 2008, the Office of Neighborhoods notified Gordon Kinter by mail that several inoperable vehicles were being stored unlawfully on the subject property and ordered removal of the vehicles pursuant to the Abandoned and Inoperable Vehicles Ordinance (the "Ordinance") [*Id.*].

On April 15, 2008, Barbara Kinter filed an application for appeal of such order to the Knox County Board of Zoning Appeals pursuant to Knox County Code § 62-368(b) on behalf of herself and Gordon Kinter [*Id.*]. On May 28, 2008, the Board of Zoning Appeals heard Mrs. Kinter's application for appeal [*Id.*]. At the hearing, Mr. Kinter, Mrs. Kinter, and defendant Rosenberg gave testimony [*Id.*]. After hearing the testimony, the Board of Zoning Appeals denied the appeal [*Id.*]. No further appeal of that decision was taken [*Id.*].

Shortly after the May 28, 2008 Board of Zoning Appeals hearing, plaintiff Thomas Driskill, Sr. ("Mr. Driskill"), the son of Barbara Kinter, contacted the Office of Neighborhoods to request additional time to remove the vehicles and to otherwise bring the

subject property into compliance with the Ordinance [*Id.*]. On or before October 21, 2008, employees of the Office of Neighborhoods went to the subject property for the purpose of determining whether Mr. Driskill had made any effort to remove the vehicles or otherwise comply with the Ordinance [*Id.*]. While at the subject property, employees of the Office of Neighborhoods posted a notice to remove on each of the vehicles and discussed what was and was not in violation of the Ordinance with Mr. Driskill, Mr. Kinter, and Mrs. Kinter [*Id.*]. The notice to remove stated in part:

> This vehicle is being considered abandoned or inoperable in violation of Knox County Ordinance O-05-9-102. Unless this vehicle is removed within 30 days from the date below, Knox County will remove and dispose of the vehicle at the expense of the owner. Appeal of this order can be made to the Knox County Board of Zoning Appeals 215-2325.
>
> October 21, 2008.

[*Id.*]. No such appeal was taken [*Id.*].

On November 21, 2008, the Office of Neighborhoods returned to the subject property to determine whether Mr. Driskill removed any of the vehicles [*Id.*]. The vehicles, however, had not been removed [*Id.*].

On February 25, 2009, employees of the Office of Neighborhoods, with the aid of Chestnut Street Towing Service, removed a portion of the vehicles from the subject property pursuant to the Ordinance [Doc. 23]. Defendants assert that the vehicles were inoperable and were not completely enclosed within a permanent or portable building consisting of a four walls and a roof as required by Knox County Code § 62-366 [Doc. 23]. Plaintiffs, however, allege that, at that time, Mr. Driskill had a fence around the vehicles, framed with used utility

poles and sawmill red oak, but had not yet put up the galvanized sheet metal cover [Doc. 2]. Further, plaintiffs allege that a thirty-five foot section was "chopped out" of the fence so that the Office of Neighborhoods could take eight of Mr. Driskill's "best vehicles" [*Id.*]. Plaintiffs additionally assert that three antique Mercedes Benz vehicles and one antique 1982 Grumman K-Trans forty-foot bus, all of which were parked outside the fenced-in area, were taken by the Office of Neighborhoods [*Id.*].

Defendants contend that none of the vehicles were antique motor vehicles [Doc. 23]. Plaintiffs, however, allege that, during defendant Rosenberg's last visit to the subject property, Mr. Driskill showed defendant Rosenberg a stack of antique and other tags for the vehicles and explained to him that such had not been kept on the vehicles due to theft of car parts and gasoline [Doc. 2].

Plaintiffs also allege that Mr. Driskill and the Kinters complained to defendant Rosenberg for over eighteen months about an allegedly illegal junkyard and allegedly illegal commercial garage located behind the Kinters' home, but that such complaints were ignored [*Id.*].

## II. ANALYSIS

### A. Standards of Review

#### 1. Pro Se Litigants

Plaintiffs are proceeding *pro se* in this matter. "[T]he allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining

4

whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court "must make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, any confusion of various legal theories, any poor syntax and sentence construction, or any unfamiliarity with pleading requirements. *Wilder v. Guilford Pharm. Prods., Inc.*, No. 2:04-CV-1199, 2006 WL 1888757, at *8 (S.D. Ohio July 7, 2006) (citing *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D.Ohio 1998)). "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial." *Id.* (citation omitted). "Indeed, courts should not assume the role of advocate for the *pro se* litigant." *Id.* (citation omitted).

### 2. Summary Judgment

Summary judgment under Federal Rule of Civil Procedure 56(c) is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Accordingly, the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). The moving party may support the motion for summary judgment with affidavits

or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 324-25. The nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Celotex*, 477 U.S. at 323. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

### B. Defendants' Arguments Concerning Plaintiffs' Federal Claims

Defendants assert that they each are entitled to qualified immunity because plaintiffs cannot establish that their actions violated a clearly established constitutional right of which a reasonable person would have known [Doc. 23]. Defendants further argue that plaintiffs fail to present a genuine issue of material fact as to whether they were denied due process of law or equal protection when the vehicles were removed from the subject property [*Id.*]. Because the Court finds that plaintiffs have failed to present a genuine issue of material fact as to whether they were denied due process or equal protection, the Court declines to address the question of qualified immunity.

The Court construes plaintiffs' complaint as asserting violation of two constitutional rights: procedural due process and equal protection. As discussed below, the Court finds dismissal of each claim appropriate because, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that no constitutional violation has occurred.

### 1. Procedural Due Process Claim

Plaintiffs' complaint appears to allege that the City is liable under 42 U.S.C. § 1983 for towing the vehicles without providing due process of law. To prevail on this claim, a § 1983 plaintiff must demonstrate that the property deprivation resulted from either: "(1) an established state procedure that itself violates due process rights, or (2) a 'random and unauthorized act' causing a loss for which available state remedies would not adequately compensate the plaintiff." *Warren v. City of Athens*, 411 F.3d 697, 709 (6th Cir. 2005) (quoting *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991)). In this case, plaintiffs seem to be asserting a claim under the first scenario.

The Fourteenth Amendment provides, in part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *See, e.g., Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001) ("Courts have long recognized that the Fourteenth Amendment requires that an individual who is deprived of an interest in liberty or property be given notice and a hearing."). Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the Court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process. *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002).

Because plaintiffs have a protected property interest in the vehicles at issue, *see Price v. City of Junction*, 711 F.2d 582, 589 (5th Cir. 1983) (holding that "[w]hether a junk car has little or great value, it is constitutionally protected property), the Court must determine whether the deprivation of that interest contravened the notions of due process. Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Determining what process is due requires a balancing of three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

With respect to the first factor, one district court in the Sixth Circuit has stated that "[t]he uninterrupted use of one's vehicle is a significant and substantial private interest." *Harris v. Cnty. of Calhoun*, 127 F. Supp. 2d 871, 876 (W.D. Mich. 2001) (citation omitted). The vehicles at issue here, however, are inoperable, which leads the Court to the conclusion that the deprivation of such works less harm than does the deprivation of a vehicle one uses as a normal mode of transportation.

With respect to the second factor, that is, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, the Court notes that the Ordinance provides:

8

(a) Notice to remove. Upon failure of any owner of property within the limits of the county to remove abandoned and inoperable vehicles as required in this article, the county, acting through the sheriff's department or any appropriate department as designated by the mayor, may serve a notice on the owner, lessee, occupant or person having control of the property, notifying any of them of the existence of the nuisance and ordering the person to remove the vehicle from the property within 30 days of service of notice, and informing the person of the time and place of the appeal to the board of zoning appeals. Such notice shall be served by:

(1) Personally serving the notice on the owner, lessee, occupant or person having control of such property;

(2) Mailing the notice to the last known address of the owner, lessee, occupant or person having control of the property by certified mail; or

(3) Posting the notice on the vehicle or on the property on which the abandoned, wrecked, dismantled, rusted, junked or inoperable motor vehicle is found.

Service of notice by any of the methods listed in this subsection shall be due notice within the meaning of this section.

If the person upon whom the notice to remove was served fails either to remove the vehicle from the property within 30 days of service of the notice or to appeal the order to the board of zoning appeals within the time provided to appeal, the county may remedy the condition and abate the nuisance by taking into custody the abandoned or inoperable vehicle.

(b) Appeal of order to remove. The owner, lessee, occupant or person having control of the property who is aggrieved by the determination of the order of the county may appeal to the board of zoning appeals by appearing before the board at the time and place stated in the notice. The board shall hear and determine the appeal as promptly as practicable but within 30 calendar days of the filing of the appeal. The order of the county may be affirmed, reversed or modified by an affirmative vote of the majority of the members of the board. Unless it is made clear that the order is contrary to the provisions of this article or other law or ordinance, or is arbitrary and constitutes an abuse of discretion, the board shall affirm the order. An owner, agent or occupant who fails, refuses or neglects to comply with the order shall be in violation of the provisions of this article. Any party aggrieved by the action of the board may

appeal the decision of the board as provided by law in the cases of certiorari. If the owner or other person described shall fail to remedy such conditions within the time prescribed by the board, the county may remedy the condition and abate the nuisance by taking into custody the abandoned or inoperable vehicle.

(c) Vehicles on private property without consent of property owner. If a motor vehicle has remained on private property without the consent of the owner or person in control of the property for more than 48 hours, the county may remove the motor vehicle and dispose of it according to the procedure set forth in this article.

(d) Right of entry. Whenever necessary to make an inspection to enforce any of the provisions of this Code, or whenever the inspecting official has reasonable cause to believe that there exists in any structure or upon any premises any condition or code violation which constitutes a violation under this part, the official may enter such structure or premises at all reasonable times to inspect the same or to perform any duty imposed upon the official by this Code. If such structure or premises are occupied, the official shall first present proper credentials and request entry. If such structure or premises are unoccupied, the official shall first make a reasonable effort to locate the owner or other persons having charge or control of such and request entry. If entry is refused, the official shall have recourse to every remedy provided by law to secure entry.

Knox County Code § 62-368.

This procedure provides for notice and meaningful opportunity to be heard prior to any vehicle being taken into custody. And here, there is no dispute that due notice and an opportunity to be heard was provided. It is undisputed that the property owners, the Kinters, received notice pursuant to § 62-368 over eleven months prior to the removal of the vehicles.[1] It also is undisputed that Mr. Driskill received personal notice that the vehicles were in violation of the relevant law at least four months prior to the removal. Furthermore,

---

[1] Although not a plaintiff, Mrs. Kinter took an appeal regarding this notice and lost.

the Office of Neighborhoods posted notices on the vehicles and defendant Rosenberg went to the subject property on at least three different occasions and was met there by Mr. Driskill and the Kinters, during which time they discussed "what was and was not in violation of Knox Co. Codes" [Doc. 2]. There also was an opportunity to be heard prior to the removal of the vehicles by way of an appeal, but none of the plaintiffs took advantage of such opportunity.

Finally, with respect to the third factor, the Court finds that the Ordinance advances Knox County's interest in towing inoperable and abandoned vehicles to abate a public nuisance and to advance the county's interest in public health and safety [*See* Doc. 23]. It also serves to encourage vehicle owners to maintain the county's appearance [*Id*.].

The Court notes here that, to the extent plaintiffs claim the vehicles were antique or enclosed within an appropriate facility, the Court does not find such contentions with merit.[2] Although plaintiffs allege certain of the cars are antique motor vehicles, they have not responded to defendants' assertions that they are not, nor have they provided the Court with sufficient information to conclude that any of the vehicles meet the definition of "antique

---

[2] The Ordinance does not apply to "any motor vehicle on private property which is not visible from the street or from other public or private property, if the motor vehicle is completely enclosed within a permanent or portable building consisting of four walls and a roof and which is in compliance with all gas, plumbing, electrical, zoning and mechanical codes, and with the Standard Building Code as adopted by the county[,]" and it is an affirmative defense for a violation of the Ordinance if the inoperable vehicle is an antique motor vehicle. Knox County Code § 62-366.

motor vehicle" set forth in Knox County Code § 62-366.[3] In addition, the complaint itself indicates that the vehicles were not enclosed within a permanent or portable building consisting of four walls and a roof and which is in compliance with the relevant codes of Knox County as required by Knox County Code § 62-366 [*See* Doc. 2 (indicating that some of the vehicles were in a fenced-in area while some were outside such)].

In sum, considering these factors, the Court finds that plaintiffs have failed to present a genuine issue of material fact as to whether they were afforded due process of law with respect to the removal of the vehicles. The Ordinance provides for pre-deprivation notice, which plaintiffs received, as well as a pre-deprivation opportunity to be heard, which was never taken advantage of. Accordingly, summary judgment will be granted and plaintiffs' due process claim will be dismissed. *See Duffy v. City of Stanton*, 423 F. Supp. 2d 683 (E.D. Ky. 2006) (dismissing due process claim of city resident whose motor vehicles were removed from property because they were in violation of city's nuisance ordinance and zoning ordinance).

---

[3] An "antique motor vehicle" is defined as:

> [A]ny motor vehicle over 25 years old which is owned solely as a collectors' item and is used for participation in club activities, exhibits, tours, parades and similar uses, but in no event for general transportation, and which is registered as an antique vehicle under applicable title and registration laws.

Knox County Code § 62-366.

## 2. Equal Protection Claim

As defendants indicate, plaintiffs appear to allege a claim under the Equal Protection Clause of the Fourteenth Amendment on the basis that the law was enforced in a discriminatory manner [*See* Docs. 2, 23]. An equal protection claim based upon selective enforcement requires a plaintiff demonstrate the following three elements:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000) (quoting *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)). In other words, plaintiffs are required to show both a discriminatory purpose and a discriminatory effect. *Gardenhire*, 205 F.3d at 318. "A claimant can demonstrate discriminatory effect by naming a similarly situated individual who was not investigated." *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 534 (6th Cir. 2002). In short, although plaintiffs allege complaints were filed about an "illegal junkyard and illegal commercial garage located behind [the Kinters'] home," the allegations set forth in plaintiffs' complaint fail to meet these requirements. Accordingly, plaintiffs' equal protection claim will be dismissed.

## C. State Tort Claims

Because the Court finds dismissal of plaintiffs' federal claims appropriate, the Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. 28 U.S.C. § 1367. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citation omitted).

## III. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion for Summary Judgment [Doc. 22]. This case will be **DISMISSED**. The Clerk of the Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE